# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:22-CV-00054-RJC-DSC

| | |
|---|---|
| MATTHEW A. JOHNSON and RHONDA JOHNSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SMITH & NEPHEW INC., | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendant Smith & Nephew Inc.'s "Motion for Partial Dismissal of Plaintiffs' Amended Complaint" (document #9) and the parties' briefs and exhibits.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion be granted as discussed below.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant Smith & Nephew Inc. manufactures and sells surgically implanted hip replacement systems and components. On November 16, 2009, Plaintiff Matthew Johnson underwent a total left hip arthroplasty. His surgeon utilized Defendant's products and implanted a Smith & Nephew femoral hip stem. Following the surgery, Plaintiff received an invoice from Carolinas Healthcare

Systems/Carolinas Medical Center-Mercy Hospital. Defendant's components, including the femoral stem, were itemized on the invoice. Plaintiff paid the invoice through his health insurance.

Plaintiff's condition improved after the arthroplasty, but he still experienced occasional hip pain. His pain worsened over the next year, and as a result, he underwent a revision surgery of his left hip arthroplasty. During the revision surgery, the surgeon implanted new Smith & Nephew products. The femoral stem was left in place.

On the afternoon of April 13, 2015, Plaintiff shifted his weight onto his left leg while changing clothes. He experienced a "pop" in his left leg and suffered severe pain. After realizing he could not move, his wife called 911. He was transported by ambulance to the hospital.

At the emergency room, X-rays revealed that the femoral stem—which was installed during the first arthroplasty—had fully fractured at the femoral neck. As a result of this fracture, Plaintiff required a second revision surgery of his left hip arthroplasty on April 14, 2015. During this surgery, the femoral stem and other Smith & Nephew products were removed. A Stryker brand femoral stem system and ceramic femoral head were implanted.

Plaintiffs filed their original Complaint in Mecklenburg County Superior Court on January 11, 2022. Defendant effected timely removal to this Court on February 9, 2022. Defendant filed a Motion to Dismiss Plaintiffs' Complaint and Incorporated Memorandum of Law in Support on February 16, 2022. Plaintiffs filed their Amended Complaint on February 28, 2022. The Court denied Defendant's Motion to Dismiss as moot without prejudice on March 3, 2022. Defendant filed this Motion for Partial Dismissal of Plaintiffs' Amended Complaint and Incorporated Memorandum of Law in Support on March 17, 2022. Plaintiffs filed their Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss on March 31, 2022. Defendant filed its Reply in Support of its Motion to Dismiss on April 7, 2022.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

"When sitting in diversity, a federal court must 'apply the law of the forum state as it is interpreted by the state's highest court.'" Moore v. Equitrans, L.P., 27 F. 4th 211, 220 (4th Cir. 2022) (quoting Adamson v. Columbia Gas Transmission, LLC, 579 F. App'x 175, 177 (4th Cir. 2014)). "If the state supreme court 'has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue.'" Moore, 27 F. 4th (quoting Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002)). "However, while sitting in diversity, we 'should not create or

expand a State's public policy.'" Moore 27 F. 4th (quoting Time Warner Ent. Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007)).

### III. DISCUSSION

Defendant's Motion for Partial Dismissal should be granted because Plaintiff is not a buyer as defined in North Carolina's Uniform Commercial Code. None of the third-party beneficiary exceptions to the privity requirement for breach of implied warranty of merchantability are applicable here.

To establish a claim for breach of implied warranty of merchantability under North Carolina law, "a plaintiff must prove the following elements: (1) that the goods bought and sold were subject to an implied warranty of merchantability; (2) that the goods did not comply with the warranty in that the goods were defective at the time of sale; (3) that his injury was due to the defective nature of the goods; and (4) that damages were suffered as a result." DeWitt v. Eveready Battery Co., Inc., 565 S.E.2d 140, 147 (2002). "Where the cause of action against the *manufacturer* is based on breach of *implied* warranty, the Products Liability Act eliminates the privity requirement where the claimant 'is a buyer, as defined in the Uniform Commercial Code, of the product involved, or . . . is a member or a guest of a member of the family of the buyer, a guest of the buyer, or an employee of the buyer.'" Crews v. W.A. Brown & Son, Inc., 416 S.E.2d 924, 929–30 (N.C. App. 1992) (emphasis in original) (quoting N.C.G.S. § 99B–2(b) (1989)). Under North Carolina's Uniform Commercial Code, a "'[b]uyer' means a person who buys or contracts to buy goods." N.C.G.S. § 25-2-103.

There is no North Carolina case law on whether a patient is the "buyer" of a medical device implanted during surgery. Defendant cites Teague v. Johnson & Johnson, Inc., No. 5:21-CV-68-FL, 2022 WL 56526 (E.D.N.C. Jan 5, 2022) in support of its argument that "[Carolinas Medical

Center] was the buyer of the stem used in [Plaintiff's] surgery." Def.'s Reply in Supp. of its Motion for Partial Dismissal of Pls.' Am. Compl. 4, ECF No. 11. But this case is inapplicable. In Teague, the court dismissed the implied warranty of merchantability claim on the grounds that "plaintiff only alleges that '[p]laintiff and/or her physicians were at all relevant times in privity with defendants'" which "amounts to assertion of a legal conclusion, not a sufficient factual allegation." Teague, 2022 WL 56526, at *7.

Courts in other jurisdictions with the same horizontal privity statute as North Carolina have dismissed implied warranty of merchantability claims brought by a patient against the manufacturer of a medical device for lack of privity. Under North Carolina, Kentucky and Georgia state law, "[a] seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of warranty." See N.C.G.S. § 25-2-318; K.R.S. § 355.2-318; O.C.G.A. § 11-2-318. In Corder v. Ethicon, Inc., 473 F. Supp. 3d 749, 754 (E.D. Ky. 2020), the court found that plaintiff did not purchase the pelvic mesh product her doctor surgically implanted and granted defendant product manufacturer's motion to dismiss the breach of implied warranty claim. Id. at 766–67. In reaching this conclusion, the court analyzed the language of Kentucky's horizontal privity statute and explained that while some states have adopted a broader version of the Uniform Commercial Code under which "breach of warranty may be extended 'to any natural person who may reasonably be expected to use, consume or be affected by the goods . . . [t]he Kentucky legislature chose to adopt the least protective of the three alternatives." Id. at 767; see also Munn v. Pfizer Hosp. Prod. Grp., Inc., 750 F. Supp. 244, 248 (W.D. Ky. 1990) (identifying the issue presented as "whether Munn, having purchased the nails from a commercial distributor (or the hospital) as

opposed to the manufacturer is, nonetheless, in privity with the manufacturer" and holding "there is simply no privity of contract between Munn and Pfizer"). Similarly, in <u>Andrews v. RAM Med., Inc.</u>, 7:11-CV-147, 2012 WL 6840593, at *3 (M.D. Ga. Apr. 19, 2012), the court held plaintiffs' claim for breach of implied warranty of merchantability failed as a matter of law for lack of privity. In <u>Andrews</u>, plaintiffs alleged defendant manufacturer provided counterfeit surgical mesh to another distributor of medical products, who in turn provided it to the medical center where plaintiff underwent a hernia repair. <u>Id.</u> at *1. The court found plaintiffs were "unable to demonstrate privity with [the defendant] because the surgical mesh was not sold directly to [them]." <u>Id.</u> at *3.

Plaintiffs did not purchase the femoral stem from Defendant and none of the exceptions to the privity requirement apply. Like the plaintiff in <u>Andrews</u>, Plaintiff is unable to demonstrate privity with Defendant because the femoral stem was not sold directly to him. He does not allege that he purchased the femoral stem at issue directly from the Defendant. Instead, he asserts that he purchased it by "paying through his health insurance the invoice from Carolinas Healthcare Systems/Carolinas Medical Center-Mercy Hospital." Am. Coml. ¶ 6. Moreover, none of the exceptions to the privity requirement are applicable. Plaintiff is not a member of Carolinas Medical Center's "household" or "family" or a "guest in its home." While Plaintiff may have paid Carolinas Medical Center for the femoral stem through his insurance, "[t]he U.C.C. does not abolish the requirement of privity that prevents a cause of action by any ultimate consumer or buyer against a remote seller or manufacturer." N.C.G.S. § 25-2-318 app. Accordingly, privity is still required for Plaintiffs to bring a breach of implied warranty of merchantability claim against Defendant. Because none of the exceptions to the privity requirement are applicable and Plaintiff is not a buyer as defined under North Carolina's Uniform Commercial Code, the claim for breach of implied

warranty of merchantability fails as a matter of law and Defendant's Motion for Partial Dismissal of Plaintiffs' Amended Complaint should be granted.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant Smith & Nephew Inc.'s "Motion for Partial Dismissal of Plaintiffs' Amended Complaint" (document #9) be **GRANTED**.

## V. NOTICE OF APPEAL OF RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad, Jr..

**SO ORDERED AND RECOMMENDED**.

Signed: June 22, 2022

_____
David S. Cayer
United States Magistrate Judge