UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00054-RJC-DSC

| MATTHEW A. JOHNSON and RHONDA JOHNSON, | ) |  |
|---|---|---|
| Plaintiffs, | ) | |
| v. | ) | **ORDER** |
| SMITH & NEWPHEW, INC., | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant Smith & Nephew, Inc.'s Motion to Dismiss Plaintiff's Breach of Implied Warranty Claim, (DE 9), and the Magistrate Judge's Memorandum and Recommendation ("M&R"), (DE 12), which recommends granting Defendant's motion. For the reasons stated herein, the Court will adopt the M&R.

I. BACKGROUND

A. Factual Background

Defendant Smith & Nephew, Inc. ("Defendant" or "Smith & Nephew") manufactures and sells medical devices, including hip replacement components. (DE 7 at ¶¶2-3). Plaintiff Matthew Johnson ("Mr. Johnson") had a hip replacement where doctors implanted Smith & Nephew products. (*Id.* at ¶6). A few years after the artificial hip was implanted, the device failed when Mr. Johnson was changing clothes. (*Id.* at ¶10). Mr. Johnson heard a loud "pop" in his hip and then felt extreme pain and grinding. (*Id.*). As a result of the failure, Mr. Johnson had to endure another major surgery where doctors removed the failed Smith & Nephew components and replaced them with Stryker components. (*Id.* at ¶12). Mr. Johnson suffered additional surgical

1

damage to his hip and leg, endured an extended recovery, and continues to deal with limited mobility and pain such that he can no longer work. (*Id.* at ¶¶13, 19). Mr. Johnson alleges that he "purchased [the] Smith & Nephew components by . . . paying through his health insurance the invoice from Carolinas Healthcare Systems/Carolinas Medical Center-Mercy Hospital for the November 16, 2009 arthroplasty. The Smith & Nephew components, including the Femoral Stem, were itemized on said invoice and, upon information and belief, the cost of the Femoral Stem was $9,000." (*Id.* at ¶6).

There are no facts that show Mr. Johnson knew of any representations made by Smith & Nephew regarding the hip replacement components, nor are there any facts that show Mr. Johnson elected to undergo the surgery because of such representations.

### B. Procedural Background

Mr. Johnson, as well as his wife Rhonda Johnson (collectively, "Plaintiffs"), filed suit against Smith & Nephew, bringing claims for (1) negligence, (2) breach of implied warranty of merchantability, and (3) loss of consortium. (DE 7). Smith & Nephew moves to dismiss the breach of implied warranty claim for failure to state a claim, arguing that Mr. Johnson was not a buyer and that no privity exception applies. (DE 9). The M&R agrees and recommends this Court grant the motion to dismiss. (DE 12).

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). However, "when objections to strictly legal

2

Case 3:22-cv-00054-RJC-DSC   Document 15   Filed 08/11/22   Page 2 of 11

issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id*. Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72, advisory committee note).

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to

3

dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISSCUSSION

At issue is whether a patient can bring a breach of implied warranty of merchantability claim against the manufacturer of a medical device that is implanted by a doctor in the patient. The M&R recommends dismissing the implied warranty of merchantability claim because there is no privity. In particular, the M&R found that no exception to the privity requirement applied because Mr. Johnson was not a buyer under the UCC. (DE 12). Plaintiffs object, arguing that Mr. Johnson was a buyer as he purchased the artificial hip by paying, through his health insurance, the invoice from the hospital which included an itemized cost for the Smith & Nephew components. (DE 13).

In North Carolina, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. GEN. STAT. ANN. § 25–2–313(1)(a). Generally, a plaintiff must have contractual privity with a defendant to bring a breach of warranty claim. *Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc.*, 175 N.C. App. 339, 345 (2006); *Crews v. W.A. Brown & Son, Inc.*, 106 N.C. App. 324, 332 (1992); *Terry v. Double Cola Bottling Co.*, 263 N.C. 1, 2 (1964); *Thomason v. Ballard and Ballard Co.*,

4

208 N.C. 1, 4 (1935). However, North Carolina's version of the Uniform Commercial Code removes the privity requirement in personal injury cases for express or implied warranties where the injured party is a "natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods." N.C. GEN. STAT. ANN. § 25–2–318. In other words, when the buyer is in privity of contract with the seller, any express or implied warranties made to the buyer inure to the benefit of the buyer's family or household guests.

Another statutory exception, under the North Carolina Products Liability Act, removes the privity requirement for "a buyer, as defined in the Uniform Commercial Code, of the product involved" where the buyer brings "a product liability action directly against the manufacturer of the product involved for breach of implied warranty." N.C. GEN. STAT. ANN. § 99B–2. Thus, a buyer who is not in privity with the manufacturer can bring a breach of implied warranty claim, notwithstanding the lack of privity. Under North Carolina's Uniform Commercial Code, a buyer is "a person who buys or contracts to buy goods." N.C. GEN. STAT. § 25-2-103(1)(a). "Goods" include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." *Id.* § 25-2-105(a).

North Carolina courts also tend to uphold an exception for buyers who are not in privity with the manufacturer when the manufacturer intends its warranties to be conveyed to a buyer through the retailer. *Kinlaw v. Long Mfg. N. C., Inc.*, 298 N.C. 494, 499 (1979) ("[A] manufacturer can extend a warranty beyond the bounds of privity if he makes representations designed to induce a purchase and directed to the ultimate purchaser."). This normally occurs when a manufacturer advertises, labels, or provides manuals with its products with the intention of inducing the ultimate purchaser to buy the product from a retailer. *Id.* at 500. For example, in *Kinlaw* the court removed

5

the privity barrier when a buyer bought a tractor from a retailer, where the tractor came with a manual from the manufacturer warranting that the tractor would be free from defects. *Id.* at 496–500. Similarly, in *Alberti v. Manufactured Homes*, the North Carolina Supreme Court allowed breach of warranty claims against the manufacturer to survive when a buyer purchased a mobile home based on representations made by the retailer, when those representations were first given from the manufacturer to the retailer for the purpose of inducing customers to buy the product. 329 N.C. 727, 729 (1991). Plaintiffs rely on *Kinlaw*, and other similar cases, to show that buyers who are injured by goods can bring breach of implied warranty claims against the manufacturer, even absent privity. However, Plaintiffs fail to cite to any North Carolina state cases that allowed a patient to bring a breach of implied warranty claim against a manufacturer of a medical device by finding that the patient was a "buyer" under the UCC. Nor is this Court aware of any such cases.

There does, however, appear to be a split within the Fourth Circuit for district courts interpreting North Carolina law on whether an exception to the privity requirement applies for patients who have medical devices implanted. At least two cases have relied on an agency argument to hold that plaintiffs who have medical devices purposefully implanted, which turn out to be defective, can bring breach of warranty claims against the manufacturer even though there is no contractual privity between the manufacturer and the patient. In the Eastern District of North Carolina, Judge Boyle denied a motion to dismiss breach of express and implied warranties against a manufacturer when a patient, who was not in privity with the manufacturer, was implanted with a faulty pelvic mesh "because plaintiff plausibly alleged that she relied on her surgeon's medical judgment, which was formed by defendants' express warranties." *Resendez v. C. R. Bard, Inc.*, No. 5:19-CV-299-BO, 2020 WL 1916690, at *2 (E.D.N.C. Apr. 20, 2020). Likewise, in the Southern District of West Virginia, Judge Goodwin denied defendant-manufacturer's summary

6

judgment on plaintiff-patient's warranty claims (in a case arising out of a multidistrict litigation) because, "[e]ven if Ms. Justus relied only on Dr. Howden's medical judgment in deciding to have the Prolift implanted, a reasonable juror could find that Ms. Justus relied on the express warranties of Ethicon as they were provided to Dr. Howden, which formed the basis for Dr. Howden's medical judgment." *Justus v. Ethicon, Inc.*, No. 2:12-CV-00956, 2016 WL 7404712, at *5 (S.D.W. Va. Dec. 21, 2016) (analyzed under North Carolina law).

However, in the Eastern District of North Carolina, Judge Flanagan dismissed a breach of implied warranty claim for an implanted medical device for lack of privity because the plaintiff was not considered a buyer of the implanted device under the Uniform Commercial Code. *Teague v. Johnson & Johnson*, Inc., No. 5:21-CV-68-FL, 2022 WL 56526, at *6-7 (E.D.N.C. Jan. 5, 2022). In *Teague*, the court dismissed the breach of implied warranty claim because there were no facts showing the plaintiff was a buyer and "medical professionals do not engage in the sale of 'goods.'" *Id.* at *7 (citing *Cameron v. New Hanover Mem'l Hosp., Inc.*, 58 N.C. App. 414, 445) (internal citations omitted).

Turning to the facts at issue, it is undisputed that Mr. Johnson was not in privity of contract with Smith & Nephew. Thus, for Mr. Johnson's breach of warranty claim to survive the motion to dismiss, one of the privity exceptions must apply. The judicial exception, which tends to uphold a privity exception for buyers when the manufacturer intends its warranties to be conveyed to a buyer through the retailer, is not applicable as there are no facts showing that Smith & Nephew made any representations aimed at Mr. Johnson or that Mr. Johnson elected to undergo the surgery because of any such representations. *Kinlaw*, 298 N.C. at 499; *Alberti*, 329 N.C. at 729. Similarly, the first statutory exception, which is under North Carolina's version of the Uniform Commercial Code, also does not apply. This exception removes the privity requirement in personal injury cases

7

for express or implied warranties where the injured party is a "natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods." N.C. GEN. STAT. ANN. § 25–2–318. Assuming, *arguendo*, that the doctor or hospital was the buyer of the artificial hip components, Mr. Johnson is not a family member or guest in the household of the doctor or hospital. Thus, this exception does not apply.

The second statutory exception, which is under the North Carolina Products Liability Act, also does not apply because Mr. Johnson is not a "buyer" of the artificial hip under the Uniform Commercial Code as there was no "sale." The North Carolina Products Liability Act removes the privity requirement for "a buyer, as defined in the Uniform Commercial Code, of the product involved" where the buyer brings "a product liability action directly against the manufacturer of the product involved for breach of implied warranty." N.C. GEN. STAT. ANN. § 99B–2. Under North Carolina's Uniform Commercial Code, a buyer is "a person who buys or contracts to buy goods." N.C. GEN. STAT. § 25-2-103(1)(a). "Goods" include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." *Id.* § 25-2-105(a). "In the context of the Uniform Commercial Code, [the North Carolina Court of Appeals] has held that medical professionals do not engage in the sale of 'goods' when they either issue a prescription for a drug, or prepare and fit dentures," both of which are medical devices which are ingested or implanted in a patient. *Cameron v. New Hanover Mem'l Hosp., Inc.*, 58 N.C. App. 414, 445 (1982); *see also id.* (holding that a public hospital, its trustees, administrator, and medical doctors on its staff were not "sellers" within the meaning of North Carolina's unfair competition statute).

In particular, North Carolina courts have held that a physician's prescription for an oral

drug is not a "sale" within the meaning of the Uniform Commercial Code because the relationship between doctors and patients is not one whereby title for goods is transferred. N.C. GEN. STAT. ANN. § 25-2-106(1); *Batiste v. Am. Home Prod. Corp.*, 32 N.C. App. 1, 5 (1977). The *Batiste* court explained this, noting:

> Plaintiff earnestly contends that the physician who issues a prescription for an oral contraceptive drug is a 'seller' within the meaning of the statute and that the issuance of the prescription constitutes passing title . . . While plaintiff's argument may be ingenuous, it is not, in our opinion, either factually or legally sound. The Uniform Commercial Code was designed to apply to transactions between a seller and a purchaser. Inherent in the legislation is the recognition that the essence of the transaction between the retail seller and the consumer relates to the article sold, and that the seller is in the business of supplying the product to the consumer. It is the product and that alone for which he is paid. The physician offers his professional services and skill. It is his professional services and his skill for which he is paid, and they are the essence of the relationship between him and his patient. To say that the issuance of a prescription for drugs . . . constitutes the transfer of title to the drugs in the formula in the prescription, is simply too unrealistic for serious consideration . . . The fact remains that one does not normally go to a physician to purchase medicines or drugs or bandages or other items incidental to medical treatment . . . A doctor diagnosing and treating a patient normally is not selling either a product or insurance.

*Batiste*, 32 N.C. App. at 5. Similarly, other North Carolina courts have dismissed breach of warranty claims for faulty dentures, holding "that the rendering of dental services in connection with a set of dentures was not a sale of goods as defined by the U.C.C." *Preston v. Thompson*, 53 N.C. App. 290, 296 (1981).

Here, Plaintiffs assert Mr. Johnson is a "buyer" of the Smith & Nephew components, and the second statutory exception under the North Carolina Products Liability Act applies, because Mr. Johnson paid his insurance premiums, and his insurance company paid the invoice for the hip replacement surgery which included a line item for the hip replacement components. For Mr. Johnson to be a "buyer" there must have been a "sale" of the artificial hip components to him from his doctor. Therefore, there must have been a "passing of title from the [seller-doctor] to the

9

[buyer-patient] for a price." N.C. GEN. STAT. ANN. § 25-2-106(1). However, North Carolina courts have repeatedly held that physicians are not sellers of medical goods as the "essence of the relationship between him and his patient" is the rendering of medical services, not the transfer of title of medical goods. *Batiste*, 32 N.C. App. at 5. Accordingly, Mr. Johnson cannot be a "buyer" under the North Carolina Uniform Commercial Code because there was no "sale" of artificial hip components. Moreover, Mr. Johnson never paid his physician for the hip replacement surgery, his insurance company did.

While two district court cases applying North Carolina law have found that a manufacturer's representations made to the doctor can inure to the benefit of the patient through an agency analysis, this stretches the narrow privity exception and does not address the "buyer" issue. *Resendez*, 2020 WL 1916690, at *2; *Justus*, 2016 WL 7404712, at *5. And, regardless, there are no allegations that Smith & Nephew made representations to Mr. Johnson's doctor in this case to entice him to use its product, so an agency analysis in inapplicable.

The Court is also aware that other courts have allowed breach of warranty claims to proceed for a patient-buyer of implanted medical devices; however, none of these cases interpret North Carolina law. *Martin v. Am. Med. Sys., Inc.*, 116 F.3d 102, 105 (4th Cir. 1997) (noting that a privity exception for a patient applied under Virginia law, which allows anyone who "might reasonably have [been] expected to use, consume, or be affected by the goods" to bring breach of warranty claims against the manufacture); *Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 410 (E.D. Pa. 2012) (noting that a patient with an artificial knee implant can be a buyer under Pennsylvania law). Of note, the Fourth Circuit in *Martin* was interpreting Virginia law, which has a much broader privity exception than North Carolina that applies not only to buyers but also to all those who might reasonably be expected to use or consume a product. Moreover, North Carolina courts have

10

repeatedly found that "a physician is neither a merchant nor a seller of goods under the U.C.C.," *Preston v. Thompson*, 53 N.C. App. 290, 296 (1981), and that "physician[s] offer[] professional services" rather than sell goods. *Batiste v. Am. Home Prod. Corp.*, 32 N.C. App. 1, 6 (1977). Patients therefore cannot be a buyer as there can be no sale when the physician is not a seller. While the Court is sympathetic to patients like Mr. Johnson, adding exceptions to the strict privity requirement is within the purview of the North Carolina legislature, not the judiciary. Accordingly, Plaintiff's breach of implied warranty claim fails for lack of privity as no exception applies.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The M&R, (DE 12), is **ADOPTED**;

2. Defendant's Motion to Dismiss Plaintiff's Breach of Implied Warranty Claim, (DE 9), is **GRANTED**.

**SO ORDERED.**

Signed: August 10, 2022

*[signature]*

Robert J. Conrad, Jr.
United States District Judge